## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:04-CR-29 |
| | ) | |
| DAVID SUBIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on the:  (1) Defendant's Motion to Suppress, filed by Defendant's former counsel, Charles E. Stewart, on January 15, 2005; (2) Defendant's Amended Motion to Suppress, filed by pro se Defendant, David Subil, on February 24, 2005; and (3) Motion For Return of Property, filed by pro se Defendant, David Subil, on March 21, 2005.  For the reasons set forth below, Defendant's Amended Motion to Suppress is **DENIED**.  Defendant's Motion For Return of Property is also **DENIED**.  Defendant's Motion to Suppress is **DENIED AS MOOT**.


<u>BACKGROUND</u>

Defendant, David Subil, was charged in a five-count superseding indictment alleging conspiracy to defraud the United States in violation of 18 U.S.C. Section 371 and 2 (Count I), engaging in an

organized scheme to defraud using counterfeit securities and aiding and abetting in violation of 18 U.S.C. Section 2314 and 2 (Counts 2 and 3), and making and possessing counterfeit security and aiding and abetting in violation of 18 U.S.C. Section 513 and 2 (Counts 4 and 5).

In his Amended Motion to Suppress, Defendant has moved to suppress any physical items or effects taken from Defendant's hotel room in the Harrah's Casino in East Chicago, Indiana (hereinafter "Harrah's"), and all "fruits" thereof, including, but not limited to: any voice mail messages retrieved and seized from the telephone in Defendant's Harrah's hotel room; the pager and contents of the pager seized by the Government from Defendant's Harrah's hotel room; Defendant's cellular phone seized by the Government from Defendant at the time of his arrest; and any items seized from Defendant's blue Ford Expedition vehicle.

The parties have submitted supplemental briefs following the evidentiary hearings and on the issue of burden of proof. The Court held evidentiary hearings on this matter on June 15, and June 22, 2005, at which Investigator Scott Nowland of the U.S. Drug Enforcement Administration, and Detectives Gary Scott and Detective Daniel Avitia of the Indiana State Police testified. In making the following findings of fact, the Court considered the credibility of the witnesses.

DISCUSSION

Findings of Fact

The Indiana State Police assigned to the Indiana Gaming Commission arrested Subil at Harrah's casino on the night of November 20, 2002.  At the time of his arrest, Subil had a valid outstanding warrant out for his arrest from the Circuit Court for the Ninth Judicial Circuit for Orange County, Florida.  The Florida arrest warrant was based upon charges alleging Subil illegally used credit cards.

Investigator Nowland and Detective Avitia testified that Subil had two forms of identification with him at the time of arrest - a New York state identification card bearing the name "David Betancourt" with a Bronx address, and a Hawaii Driver's License bearing the name "David Betancurt" with a Honolulu address.  (*See* Govt. Ex. 6.)  The Indiana State Police charged Subil with criminal refusal to correctly identify himself to the arresting officers and resisting arrest. Investigator Nowland testified that he was present when Paul Glavurtich, with Harrah's security, read an eviction notice to Defendant.  (*See* Govt. Ex. 5.)

Investigator Nowland and Detective Scott testified that, at some point after Subil's arrest, they determined that Harrah's Room 1109 was rented to a person identified as "David Betancourt," Subil's alias.  The same night of Subil's arrest, the police conducted a search and subsequently towed a Ford Expedition believed to be Subil's

-3-

vehicle.  The vehicle was registered to Monahan Ford Corporation in New York.  (*See* Govt. Ex. 14.)

The day after Subil's arrest, on November 21, 2002, the Indiana State Police secured registration documents for Room 1109.  According to Detective Gary Scott, the hotel registration form indicated a departure date of November 21, 2002, with a checkout time of 11:00 a.m. (*See* Govt. Ex. 8.)  Originally, Subil made a reservation to stay at Harrah's from November 17, 2002, through November 19, 2002.  On November 19, 2002, Defendant extended his stay.  Again, on November 20, 2002, Defendant extended his stay until November 21, 2002.  "David Betancourt" was a Harrah's diamond member, and received a free (or "comped") room during his stay at Harrah's.  (*See* Def.'s Ex. 32, Govt. Ex. 7.)  When Defendant's room was closed, it carried a credit of $89.26.  (*See* Bartok Aff. ¶ 3.)

Detective Scott interviewed Harrah's housekeeping supervisor, Laura Jones, on November 21, 2002.  Jones said that routine cleaning services were not performed in Room 1109 on November 20, 2002, because numerous papers and objects were left on the floor.  Jones entered Room 1109 on November 20, 2002, to confirm the room's condition, and briefly met Subil.  Subil told Jones not to worry about cleaning the room that day because he would be leaving the following day (November 21, 2002).

Between approximately 11:20 a.m. and 3:00 p.m. on November 21, 2002, Indiana State Police interviewed hotel personnel about Subil's

-4-

activities in the casino.  The Government entered an exhibit showing that Defendant's safe deposit box at the hotel was emptied on November 20, 2002. (Govt. Ex. 11.)  The safety deposit register contains a blank for "departure date"; however, a handwritten "?" appears in that spot on the form.  (*Id*).  Harrah's security director signed a consent to search form authorizing Indiana State Police to enter Room 1109 at approximately 3 p.m. on November 21, 2002.  An evidence seal had been placed on the door, and the seal was unbroken and the police entered the room with the Harrah's representative at approximately 3:00 p.m. The police conducted a visual search of the room, recorded on videotape, and then re-sealed Room 1109.

The following federal search warrants were issued after the visual search of Room 1109.  On November 22, 2002, a search warrant was issued for Harrah's Room 1109.  On November 22, 2002, a search warrant was issued for the search of electronic records at Harrah's, including voice mail messages.  On November 25, 2002, a search warrant was issued for the search of Subil's pager.  On November 25, 2002, a search warrant was issued for the search of a cellular telephone recovered from Subil.  And on November 27, 2002, a search warrant was issued for the search of the Ford Expedition.

Conclusions of Law Regarding the Motion to Suppress

The Fourth Amendment protects persons from unreasonable searches and seizures and this protection has been extended to the states

-5-

through the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); U.S. Const. Amend. IV.  The Fourth Amendment prohibits a warrantless search, unless the search falls under one of the recognized exceptions to the warrant requirement.  *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985).

Lawfulness of the Search of Subil's Hotel Room

Subil argues that the search of his Harrah's hotel room was illegal because it was conducted without a warrant.  Specifically, Subil contends that the Fourth Amendment applies to persons and their belongings kept in a hotel room, and that Harrah's did not have the authority to consent to the search of his room.

In response, the Government agrees that Subil had a reasonable expectation of privacy when he was entitled to private occupancy of Harrah's Room 1109.  However, once his rental period ended, the Government contends Subil lost any privacy right associated with the room, and that the search was valid.  The Government claims the initial entry into Harrah's Room 1109 was done pursuant to a valid consent search secured from Harrah's.

Standing

The parties have disputed the burden of proof in this case. To challenge a search under the Fourth Amendment, an individual must be

-6-

able to show standing - that he had a legitimate expectation of privacy in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The standing requirement is based upon the principle that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 171-72 (1969).

Thus, a threshold issue in deciding a motion to suppress is whether the search at issue violated the rights of the particular defendant who seeks to exclude the evidence - in this case, Subil. *Rakas*, 439 at 130 n. 1. In *Rakas*, the Supreme Court made clear that the defendant bears the burden of proving that he has standing to challenge the legality of a search. *Id.; see also United States v. Duprey*, 895 F.2d 303, 309 (7th Cir. 1989) (finding defendant objecting to the search of a particular area bears the burden of proving a legitimate expectation of privacy in the area searched). In this case, the burden is on Defendant to establish standing in the form of a reasonable expectation of privacy regarding the initial search of his hotel room, and regarding the vehicle search.[1]

---

[1] However, as the Court in *United States v. Longmire*, 761 F.2d 411, 417 n. 3 (7th Cir. 1985), recognized, "[t]he issue of standing has received special treatment by the Supreme Court, and its decisions on the issue cannot be read to place the burden of persuasion on the defendant who seeks to suppress illegally seized evidence." The general federal rule, which applies in this case, is that "[i]f the search or seizure was effected

In determining whether an individual has a legitimate expectation of privacy, the individual must have both a subjective expectation of privacy, and the subjective expectation must be reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967). According to the Supreme Court:

> Since the decision in *Katz v. United States*, it has been the law that "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." A subjective expectation of privacy is legitimate if it is "one that society is prepared to recognize as "reasonable."

*Minnesota v. Olson*, 495 U.S. 91, 95-6 (1990) (internal citations omitted) (citing *Rakas*, 439 U.S. at 143); *see also California v. Ciraolo*, 476 U.S. 207, 211 (1986) (setting forth two-part test).

Generally, a guest in a hotel room does have a reasonable expectation of privacy. The Seventh Circuit has held that:

> It has long been established that protection against unreasonable searches and seizures is not limited to one's home but extends as well to a person's privacy in temporary dwelling places such as hotel or motel rooms.

*Finsel v. Cruppenink*, 326 F.3d 903, 907 (7th Cir. 2003) (citing *Stoner*

---

pursuant to a warrant, the defendant bears the burden of proving its illegality; if the police acted without a warrant, the prosecution bears the burden of establishing legality." *Id.* at 417. Therefore, with respect to the warrantless searches of Defendant's hotel room and the vehicle, if Defendant can establish standing, then the Government would bear the burden of proving the legality of the searches.

*v. California*, 376 U.S. 483, 490 (1964); *United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir. 1996); *United States v. Rosario*, 962 F.2d 733, 736 (7th Cir. 1992)); *see also United States v. Jerez*, 108 F.3d 684, 690 n.4 (7th Cir. 1997) ("It is a well-established principle that the protection against unreasonable searches and seizures is not limited to one's home but extends as well to a person's privacy in temporary dwelling places such as hotel or motel rooms.").   As Subil points out, "hotel personnel cannot consent to the search of a guest's room." *Finsel*, 326 F.3d at 907.   Yet, this expectation of privacy is not unlimited.

In general, a hotel guest does not have a reasonable expectation of privacy in his hotel room after the rental period has expired.  The Court in *Finsel* recognized this exception, noting that when "a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room . . . ."  *Id.*  (quoting *United States v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987)); *see also United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997) (finding no legitimate expectation of privacy in a hotel room after rental period has expired); *United States v. Larson*, 760 F.2d 852, 855 (8th Cir. 1985) (quoting *United States v. Parizo*, 514 F.2d 52, 54 (2d Cir. 1975)) ("when the term of a guest's occupancy of a room expires, the guest loses his exclusive right to privacy in the room.  The manager of a motel then has the right to enter the room and may consent to search of the room and the seizure of the items

there found.").

Defendant does not dispute the existence or validity of this authority providing that when a hotel guest's rental period has expired or been lawfully terminated, the guest no longer has a legitimate expectation of privacy in the hotel room.  (Def.'s Supp. Briefing on Def.'s Am. Mot. to Suppress, p. 5.)  Rather, Defendant maintains that Subil had a legitimate expectation of privacy in his hotel room after his arrest, and during the subsequent search of his room, because Defendant did not intend to checkout of Room 1109 on November 21, 2002.

In support, Defendant highlights the following undisputed facts: Defendant was still checked in at the time of his search, his room was free or "comped," the room carried a credit for expenses, Defendant had already extended his stay twice, and the videotaped initial search of the room shows that Defendant's belongings were spread all about the room.  Defendant also cites to *United States v. Kitchens*, 114 F.3d 29 (4th Cir. 1997).  In *Kitchens*, the Fourth Circuit stated that:

> A guest may still have a legitimate expectation
> of privacy even after his rental period has
> terminated, if there is a pattern or practice
> which would make that expectation reasonable.

114 F.3d at 32 (citing *United States v. Watson*, 783 F. Supp. 258, 263 (E.D. Va. 1992) (finding legitimate expectation of privacy since guest had continually paid his bill several hours after the check-out time); *United States v. Owens*, 782 F.2d 146, 150 (10th Cir. 1986) (legitimate expectation of privacy in a motel room after check-out time because

-10-

the guest continued to occupy the room and had paid for the room late on several occasions). However, in *Kitchens*, the Fourth Circuit found defendants lacked a legitimate expectation of privacy in their motel room, and had no standing to object to the search, because there was "no evidence in the record that the Kitchenses had a pattern or practice of staying past check-out time, nor is there evidence that the motel had a pattern or practice of allowing them to do so." *Kitchens*, 114 F.3d at 32. Similarly, in this case, although Defendant did extend his stay for two days during the trip in question, Defendant has not shown a pattern or practice of Defendant staying past the checkout time.

Both *Stoner v. California, 376 U.S. 483 (1964)*, and *Finsel v. Cruppenink, 326 F.3d 903 (7th Cir. 2003)*, quoted by Defendant, are distinguishable. *Finsel* involved a hotel guest who was physically present in the room when the police attempted to gain access, and *Stoner* involved the search of a hotel room when the tenant was still checked in. In this case, Subil had been arrested pursuant to a search warrant prior to the search, so he was not present in the room. Additionally, Subil's checkout time was 11:00 a.m. on November 21, 2002, and the visual search was conducted at 3:00 p.m. on November 21, 2002, several hours after checkout time.

This case is more analogous to *United States v. Akin*, 562 F.2d 459 (7th Cir. 1977). There, defendant Akin rented a hotel room for one night. After the arrest of Akin's alleged co-conspirator, FBI

agents went to Akin's hotel room and found the door open, with no one
present.  The agents consulted the secretary to the general manager
of the hotel, and she did not find any indication that the defendant
planned to stay in the hotel for an additional day.  She gave the FBI
permission to enter the room if it was not paid for by the 1:00 p.m.
checkout time.  When the room was not paid for by 1:00 p.m., the hotel
personnel gave the agents permission to enter the room, and they found
various toilet articles as well as latent fingerprints, which were
introduced into evidence.  The Seventh Circuit upheld the search,
stating "[a]t the conclusion of the occupancy period, the hotel
manager may enter the room or consent to its search."  *Akin*, 562 F.2d
459, 464 (citing *Parizo*, 514 F.2d at 54).

Defendant stresses two main differences between *Akin* and this
case.  First, in *Akin*, the defendant had not paid for the room.  Here,
Subil's room had a credit, and it was "comped."  Defendant argues he
could have stayed indefinitely because his room was "comped."  Second,
in *Akin*, the defendant had taken most of his belongings and apparently
abandoned the room.  Here, Subil's belongings were still in his hotel
room at the time of the search.  (*See* Def. Ex. 34, videotape of Room
1109.)  The fact that the room was "comped" and that Subil had not
removed his property from the hotel room does not alter the fact that
Harrah's had rightfully assumed control of the room.  *See Norwood v.
State of Indiana*, 670 N.E.2d 32, 36 (Ind. Ct. App. 1996) ("[t]he fact
that [defendant's] property remained in the room does not alter the

-12-

fact that the hotel had rightfully reassumed exclusive control of the room."); *United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970) (upholding search of motel room after checkout time had expired, even though personal effects were still in the room).  Subil had been arrested in the gaming area of the hotel, the checkout date and time had lapsed by several hours at the time of the search, Subil had told housekeeping that he intended to check out on November 21, 2002, and Subil had emptied his safety deposit box.  Based upon all the evidence, this Court finds that Subil did not have a subjective expectation of privacy in Room 1109 at the time of the search.

Additionally, Defendant lacks standing because of his eviction. *See, e.g., Young v. Harrison*, 284 F.3d 863, 869 (8th Cir. 2002) ("When a hotel guest is properly evicted he loses the Fourth Amendment's protection against warrantless entry."); *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir. 1977) ("Appellant had no reasonable expectation of privacy with respect to a room from which he had been justifiably ejected.").  Here, Subil was read an arrest/eviction notice.[2]  Shortly after his arrest, Defendant was evicted from

_____

[2] The Harrah's eviction/arrest report read to Subil at the time of his arrest states as follows:  "I represent the landlord of the premises of Harrah's Casino East Chicago.  Your conduct has exceeded the bounds of proper behavior for a person invited or privileged to remain on the premises.  Therefore, you are forever and permanently evicted.  If you refuse to leave or return after having been evicted you will be arrested for trespassing." (Govt. Ex. 5.)  Although Defendant questions Officer Nowland's recollection that this document was read to Defendant in Officer Nowland's presence, this Court found Officer Nowland's testimony to be credible.

Harrah's.  At this time, Defendant lost any reasonable expectation of privacy in his hotel room, and lost standing to object to the sealing of his room and subsequent search.

This Court has not based its determination that Subil lacks standing on the use of an alias.  However, even assuming *arguendo*, that Defendant had a subjective expectation of privacy, the Court doubts that society would recognize a legitimate expectation of privacy in a hotel room secured by an alias.  For example, in *United States v. Wai-Keung*, 845 F. Supp. 1548, 1563 (S.D. Fla. 1994), the court held that "[s]ociety should not recognize an expectation of privacy in a hotel room obtained fraudulently, and we do not believe that such an expectation is legitimate or reasonable."  Thus any expectation of privacy was diminished by Subil's use of an alias, as several courts have recognized in cases where hotel rooms were obtained under a false name or with false documents.  *See, e.g.*, *United States v. Cunag*, 386 F.3d 888, (9th Cir. 2004) (defendant who forged notes and manufactured a fraudulent identification card in procuring hotel room did not have a subjective belief he had a reasonable expectation of privacy in the habitation); *United States v. Carr*, 939 F.2d 1442, 1446 (10th Cir. 1991)(noting that important factors to be considered in determining whether there was a legitimate expectation of privacy include ownership, lawful possession, or lawful control of the premises searched); *United States v. Salameh*, No. S5 93 Cr. 0180 (KTD), 1993 WL 364486 (S.D.N.Y. Sept. 15, 1993) (quotation

-14-

omitted)(noting "[t]he expectation of privacy when using an alias in connection with an illicit activity is not one that society is prepared to recognize as reasonable").   Similarly, because Subil procured his hotel room through an alias, this Court doubts that society would recognize a legitimate expectation of privacy in his hotel room.

For all of the aforementioned reasons, this Court finds that Subil's exclusive right to privacy in room 1109 lapsed prior to the police search, and Subil lacked a legitimate expectation of privacy in room 1109 at the time of the search.   Consequently, Defendant lacks standing to challenge the search of his hotel room.


Lawfulness of the Vehicle Search

Vehicles are entitled to less Fourth Amendment protection than homes, because of the different privacy concerns that apply to each. *United States v. Johnson*, 170 F.3d 708, 716 (7th Cir. 1999).   If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search.   *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001).   In this case, because the Indiana State Police initially searched Subil's vehicle without a warrant, the Government must prove the legality of the search.   However, as with the search of Room 1109, Defendant must first establish that he has standing to contest the search of the Ford Expedition.

-15-

A vehicle at a hotel does not enjoy a heightened level of privacy. The Seventh Circuit:

> [H]a[s] always rejected the notion that a hotel occupant enjoys the same expectation of privacy in his car in the parking lot of the hotel as he does in the room itself; the hotel parking lot is "readily accessible to the public and not generally thought of as a place normally used as a residence."

*United States v. Washburn*, 383 F.3d 638, 642 (7th Cir. 2004) (quoting *United States v. Foxworth*, 8 F.3d 540, 545 (7th Cir. 1993)). Thus, even though Defendant's car was parked in Harrah's valet parking lot, Defendant had no heightened expectation of privacy.

First, the Government contends that Defendant lacks standing with respect to the search of the Ford Expedition vehicle. In support, the Government argues that the vehicle was registered to a New York business (not Defendant, or any of his aliases), and during the search, the police discovered insurance documents indicating the vehicle was insured for "Jose Fernandez," not Subil, or David Betancourt, or David Betancurt. The Government also asserts that Defendant's bare assertion that he was the owner of the vehicle is not enough to establish a legitimate expectation of privacy in the Ford Expedition.

In response, Defendant urges that it is the Government's burden to prove that Subil was not authorized to possess the vehicle, and that the Government put forth no evidence showing that the Ford Expedition was stolen, or that Defendant did not have permission from

-16-

the registered owner of the car, the Monohan Ford Corporation, to use the vehicle. Defendant cites *United States v. Garcia*, 897 F.2d 1413, 1416-18 (7th Cir. 1990), in which the Seventh Circuit held that even though a searched vehicle had been reported stolen, the driver of the vehicle (not the title owner) did have standing to challenge the search.  Specifically, the Seventh Circuit found that "[t]he burden is on the government to prove by a preponderance that property is not being used with the permission of the owner," and the Government failed to meet that burden.  *Id.* at 1419.  However, Defendant fails to acknowledge that in *Garcia*, the defendant claimed to have borrowed the vehicle from an individual who reported the vehicle stolen after apparently learning of the defendant's arrest in an attempt to disassociate himself from the defendant.  The Court held that "[i]n such a set of circumstances, it remains for the government to prove by the preponderance of the evidence that the vehicle was stolen." *Id.* at 1418.

The Seventh Circuit subsequently clarified *Garcia* in *United States v. Torres*, 32 F.3d 225 (7th Cir. 1994).  In *Torres*, the Court reiterated that Fourth Amendment rights are personal rights which may only be asserted if the defendant demonstrates that his personal rights were violated by the challenged search.  *Id*. at 229-30 (citing *United States v. Fuesting*, 845 F.2d 664, 671 (7th Cir. 1988); *Rakas*, 439 U.S. 128).  It is well-settled that "[a] defendant objecting to the search of a particular area bears the burden of proving a

-17-

legitimate expectation of privacy in the area searched." *Torres*, 32 F.3d at 230 (quoting *Duprey*, 895 F.2d at 309).

    With regard to the standing issue, the Court explained that:

> While this circuit has recognized that a driver who does not own the vehicle he is operating may possess standing to challenge a search of the automobile, *United States v. Garcia*, 897 F.2d 1413 (7th Cir. 1990), that case and the cases upon which it relies make clear that **the driver must present evidence establishing that he has a legitimate expectation of privacy in the area searched of the object seized.**

*Torres*, 32 F.3d at 230 (emphasis added). Because the defendant in *Torres* failed to present any evidence establishing a legitimate expectation of privacy, the Court concluded he lacked standing to challenge the search. *Id.* Thus, a driver who does not own the vehicle he is operating may still possess standing to challenge a search of the vehicle, "but only if the driver presents evidence showing that he has a legitimate expectation of privacy in the area searched." *United States v. Jackson*, 189 F.3d 502, 508 (7th Cir. 1999) (citing *Torres*, 32 F.3d at 230).

    In this case, it is undisputed that Defendant was the driver of the Ford Expedition; however, that alone does not establish standing. Defendant has put forth no evidence showing that he was in fact the owner of the Ford Expedition, or that Defendant had permission from the registered owner of the car, the Monohan Ford Corporation, to use the vehicle. In fact, the Court has been provided with no information whatsoever about the identity of the registered owner, the Monohan

-18-

Ford Corporation.  Defendant solely relies on bare assertions in his briefs that he had been driving the vehicle, he was the undisputed owner of its contents, and he personally entrusted the vehicle to the parking lot at Harrah's.  (Def.'s Supp. Mem. at 3.)   Although Investigator Nowland testified that they knew Defendant drove the Ford Expedition, this fact alone does not establish that Defendant was in lawful possession of the vehicle and that he had a legitimate expectation of privacy in the Ford Expedition.  Similarly, just because Defendant put the vehicle into valet parking at Harrah's does not mean he had a legitimate expectation of privacy in the vehicle. Upon consideration, the Court finds that Defendant failed to establish that he had a legitimate expectation of privacy in the Ford Expedition, and therefore lacks standing to challenge the search.

Even assuming, *arguendo*, that Subil did have standing to contest the search of the Ford Expedition,, his motion to suppress fails on the merits as well.  In *Carroll v. United States*, 267 U.S. 132, 153-56 (1925), the Supreme Court recognized the "moving vehicle" exception to the warrant requirements of the Fourth Amendment.  A vehicle may be searched without a warrant if there is probable cause to believe the car contains contraband or evidence of a crime.  *California v. Acevedo*, 500 U.S. 565, 569 (1991).  Moreover, "[a] search of an automobile based on probable cause lawfully extends to all parts of the vehicle in which contraband or evidence could be concealed including closed compartments and trunks."  *United States v. Young*,

-19-

38 F.3d 338, 340 (7th Cir. 1994).

The Supreme Court has held that the task of determining the existence of probable cause "is simply to make a practical, common-sense decision whether, given all of the circumstances set forth . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In this case, the Court finds that the Government has established the Indiana State Police had probable cause to believe that the vehicle contained contraband - including evidence of Defendant's aliases, his true identity, and documents related to his arrest for credit card fraud.


Defendant's Motion to Return Property

Defendant filed a Motion for Return of Property pursuant to Federal Rule of Criminal Procedure 41 (g), requesting the return of $5,483 seized from Subil at the time of his arrest.  Defendant claims the money was seized without probable cause, he was not provided an adversarial hearing concerning the property in question, and he was not provided notice.  Because the hearings on the motion to suppress involved the arrest and subsequent search and seizure, Defendant has been effectively provided an adversarial hearing concerning the $5,383 at issue.  Additionally, because this Court has denied Defendant's motion to suppress, it also finds that the $5,863 was properly seized from Subil.

Finally, the Government contends that the $5,383 was lawfully seized by the Indiana State Police and transferred to the United States Secret Service pursuant to 18 U.S.C. § 981(b)(2)(C). Defendant's superseding indictment contains the following forfeiture allegations: "As a result of the offense alleged in Count 1 of the Indictment, David Subil . . . shall forfeit to the United States of America the below listed property, used and intended to be used, to commit and to promote the commission of such offenses states in paragraph one of this allegation; 1. $5,863.00 U.S.C. seized from David Subil." The indictment serves as notice of the forfeiture to Defendant. For all of the foregoing reasons, Defendant's Motion for Return of Property is **DENIED**.

<u>CONCLUSION</u>

For the reasons set forth above, Defendant's Amended Motion to Suppress is **DENIED**. Defendant's Motion For Return of Property is also **DENIED**. Defendant's Motion to Suppress is **DENIED AS MOOT**.

**DATED:  July 21, 2005**            **S/RUDY LOZANO, Judge**
                                     **United States District Court**